IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| A.V. AVINGTON, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 12-CV-621-JED-FHM |
| v. | ) | |
| | ) | |
| METROPOLITAN TULSA URBAN LEAGUE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**I.    Background**

Plaintiff, A.V. Avington, Jr., alleges employment discrimination based on sex and age and asserts claims under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA). He asserts that a less qualified woman was hired for a position for which he applied with defendant, Metropolitan Tulsa Urban League (MTUL), and that he was not hired as a result of discrimination. MTUL sought dismissal based upon belated service of process and the fact that MTUL has fewer than 15 employees and is thus not an "employer" against whom claims under Title VII or the ADEA may be brought. In the alternative, MTUL sought summary judgment on the employee numerosity issue. Because both Mr. Avington and MTUL relied upon materials outside of the pleadings, including MTUL's submission of an affidavit in reply briefing, the Court converted the dismissal motion to a motion for summary judgment and permitted Avington to supplement his response with any additional evidence, and authorized MTUL to respond. The motion is now fully briefed and at issue.

**II.    Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

### III. Discussion

#### A. Service of Process

MTUL has sought dismissal based upon a delay in service of almost two months beyond the 120 day deadline provided by Fed. R. Civ. P. 4(m). As good cause for the delay in service, Mr. Avington alleges that, because he filed *in forma pauperis* (IFP), he was dependent upon the United States Marshal to make service, he timely requested service, and the delay in service was no fault of his own. Even if that is not good cause, the Court should still consider whether to authorize a permissive extension of the service deadline or whether dismissal is appropriate. *See, e.g., Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *accord Sanders v. Southwestern Bell Tel.*, 544 F.3d 1101, 1111 (10th Cir. 2008). Moreover, dismissal for failure to timely serve would only be a dismissal without prejudice. Fed. R. Civ. P. 4(m). Here, because the delay was not excessive, Mr. Avington is IFP and reliant upon the Marshal's Service to

achieve service of process, and MTUL has appeared and seeks summary judgment on an element of the underlying claims, the Court determines it appropriate to extend the deadline for service, after the fact, rather than to dismiss the action without prejudice. This seems the more appropriate course in light of all of the circumstances presented here and the fact that Avington's claims will be determined on summary judgment, as will be discussed below.

B. **Employment Discrimination Claims**

Title VII prohibits discrimination in employment based upon race, color, religion, sex, or national origin, and the ADEA prohibits age discrimination in employment. "The term employer" under Title VII "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . ." 42 U.S.C. § 2000e(b). For a defendant to be an "employer" under the ADEA, the employee-numerosity requirement is 20 employees. 29 U.S.C. § 630(b). The threshold number of employees for application of the employment discrimination laws is an element of a plaintiff's claim for relief, rather than a subject matter jurisdiction hurdle. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (determining numerosity to be an element of a Title VII claim).

Mr. Avington does not dispute that MTUL is a non-profit organization that employed fewer than 15 employees during the relevant time frame.[1] However, he asserts that the number of employees of MTUL should be aggregated with the number of employees of the National Urban League (NUL) under the "single employer" or "integrated enterprise" test, such that the requisite employee numerosity exists to maintain Title VII and ADEA claims against MTUL.

---

[1] MTUL provided a sworn affidavit of its President that MTUL employed fewer than 15 employees (Doc. 8-1), and Mr. Avington's own submission states that MTUL has eight full-time and two part-time employees. (*See* Doc. 20 at 28).

3

The single employer test "asks whether two nominally separate entities should in fact be treated as an integrated enterprise." *Bristol v. Board of County Comm'rs of County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc). In applying the single employer test, courts generally apply four factors: "(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Id.* at 1220 (citation omitted). The third factor is generally deemed "to be the most important." *Id.*

The record in this case does not present any genuine factual dispute that supports inclusion of NUL employees in MTUL's employee count for purposes of satisfying Title VII or the ADEA. Mr. Avington has supplied several unverified exhibits, all of which appear to be website printouts generally referencing NUL as having approximately 100 affiliates, one of which is MTUL. According to Avington, the fact that MTUL is an affiliate of NUL, alone, requires that the Court count all employees of NUL to determine that the requisite employee numerosity exists under Title VII and the ADEA. While the information he supplies may support that they are affiliates, it does not provide any information relevant to the four factors of the single employer test. As to the four factors, MTUL has presented the following evidence, which Avington has not disputed.

### 1. *Interrelations of Operations*

The operations of MTUL and NUL are not interrelated. The two entities do not maintain combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, or offices.

### 2. *Common Management*

MTUL's management is by a board of directors. None of the directors on the MTUL board of directors serve on the NUL board of directors.

    *3.*  *Centralized Control of Labor Relations*

  Besides the position of President of MTUL, the NUL exercises no influence over whom MTUL considers for employment, hires, or terminates. While NUL participates in certifying the eligibility of applicants for the position of President of MTUL, it does not control whom MTUL ultimately hires as President. MTUL exercises complete and exclusive control over every other position of employment at MTUL, including the position which is the subject of Mr. Avington's Complaint.

    *4.*  *Common Ownership and Financial Control*

  The NUL does not have or exercise financial control over MTUL. MTUL is solely responsible for financially sustaining itself. MTUL maintains separate bank accounts, and any decisions regarding investment, appropriation, or expenditure of MTUL funds are made by MTUL and its board of directors, with no influence from the NUL.

  These undisputed facts establish an *absence* of interrelations of operation and common management and that NUL does *not* control MTUL's finances, employment decisions, or labor relations. Avington has presented no evidence upon which a reasonable jury could find that MTUL and NUL should be treated as a "single employer" or "integrated enterprise."

  Mr. Avington argues that *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), involves "the same identical contention and defense made by the defendant(s) in this case." (Doc. 20 at 4). The Court disagrees, as the facts involved in *Armbruster* are not similar to the undisputed evidence presented here. In *Armbruster*, there was significant evidence that would support a finding of single employer status for two business entities. For example, the evidence established that the

president of the parent company was a director and officer of the subsidiary, and he was required to authorize all purchases by the subsidiary which exceeded two hundred dollars. The parent "handled" the subsidiary's accounts receivable, payroll and cash accounting, monitored all sales shipments, and provided administrative backup to the subsidiary. The subsidiary's bank accounts were located at the parent's headquarters. The subsidiary's managerial employees used the parent company's credit cards and aircraft. The parent company's personnel also negotiated and "closed" the purchase of the subsidiary's office building and approved all office remodeling. As noted by the Sixth Circuit, "[t]hese facts evidence[d] the close interrelation of operations" between the parent and subsidiary companies. *Id.* at 1338-39. There was also evidence in *Armbruster* of centralized control of labor, which is not present here. The subsidiary's plant manager in *Armbruster* was hired by the parent, and several subsidiary employees were transferred from the parent or other subsidiaries of the parent. The subsidiary participated in the parent's ERISA plan, and documentary evidence indicated that the subsidiary sought the approval of the parent to hire one of the plaintiffs. The Sixth Circuit noted that such evidence would give rise to the inference that the parent company "exercised a significant measure of control over [the subsidiary's] hiring decisions and its financial status." *Id.*

In contrast to *Armbruster*, the evidence here does not support a finding of centralized control of labor relations or interrelations of operations. It is undisputed that MTUL and NUL maintain separate accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, and offices, do not have common management, and MTUL exercises control over its own hiring and employment decisions, including as to the position which is the subject of Mr. Avington's Complaint. For these reasons, *Armbruster* is not persuasive.

## IV. Conclusion

There is no genuine dispute of material fact regarding the number of MTUL's employees (which was fewer than 15 during the relevant time frame), and Avington has not presented any evidence that supports a determination that MTUL and NUL are a "single employer" or an "integrated enterprise" under the test adopted by the Tenth Circuit. Because MTUL had fewer than 15 employees, it is not an "employer" under Title VII or the ADEA. MTUL's Motion for Summary Judgment (Doc. 8) is accordingly **granted**.

SO ORDERED this 2nd day of July, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE